UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| CELLMARK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 24-181-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ROBERT WEBSTER, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff CellMark, Inc., has filed an eight-count Complaint alleging that Robert Webster, along with Dinah Bowman, Goran Sohl, Fortex Americas, LLC ("Fortex"), and DRC Industries, Inc. ("DRC"), conspired to divert business opportunities from CellMark and did so through misappropriating CellMark's trade secrets, breaching contracts with CellMark, and in violation of Webster's fiduciary duties. The matter is pending for consideration of a motion to dismiss filed by Webster, a motion for judgment on the pleadings by DRC, and a motion for judgment on the pleadings by Bowman, Sohl, and Fortex. For reasons explained below, Webster's motion will be granted, in part, and denied, in part. DRC's motion will be granted, in part, and denied, in part, and Sohl, Bowman, and Fortex's motion will be granted, in part and denied, in part.

**I.**

CellMark, Inc. ("CellMark") is a paper and packaging company based in Norwalk, Connecticut. Its focus is the production of specialized packaging and paper products. As part of its business strategy, CellMark seeks to develop long-term relationships with clients and

- 1 -

suppliers because it believes this provides a competitive advantage in that such relationships allow CellMark to offer specialized and customized products to meet its clients' needs. [Record No. 1 at ¶ 18]

In 2017, CellMark purchased Semper/Exter Paper Company, LLC ("Semper"). Robert Webster was a principal with Semper at the time of this acquisition. Webster entered into a commission-based employment agreement with CellMark as part of the conditions of CellMark's acquisition of Semper. [*Id*. at ¶ 22] Webster also agreed to restrictive covenants not to compete with CellMark while he was employed with the company, and he agreed to maintain the confidentiality of CellMark's trade secrets. [*Id*. at ¶¶ 20-21] Specifically, his agreement prevented Webster from soliciting customers for any other company during his employment with CellMark and for twelve months thereafter. [*Id*. at ¶24]

Goran Sohl was formerly employed by CellMark and is now the President of Fortex. CellMark alleges that Webster provided Sohl with confidential information regarding one of CellMark's clients who was looking to buy a particular type of paper. [*Id*. at ¶ 28] DRC Industries Inc. ("DRC") is also one of CellMark's competitors. [*Id*. at ¶ 10] The essence of CellMark's Complaint is that during his employment with CellMark, Webster diverted business away from the company to DRC and Fortex while planning his departure. CellMark also claims that Webster abused his trust position within the company and provided trade secrets and other competitive information to DRC and Fortex.

CellMark further contends that, as part of his scheme, Webster engaged numerous other individuals to divert business from the company. It is alleged that Dinah Bowman was one of these individuals. Bowman, was also employed by CellMark and purportedly communicated with Webster about how a new customer would be a potential fit for a new business enterprise

Webster was attempting to start. [*Id.* at 36.] CellMark claims that Bowman and Webster worked in unison with Sohl and Fortex, and CellMark specifically contends that Bowman worked as an agent of Fortex in its efforts to divert business from the plaintiff. [*Id.* at 15]

In another alleged instance of Webster trying to drive business to CellMark's competitors, it claims that Webster used CellMark's sponsorship of a customer's annual conference to bring together Sohl, DRC, and Webster to discuss diverting business to DRC industries and Fortex. [*Id.* at ¶ 43] And these efforts allegedly continued as Webster brought Sohl to a paper mill that produced specialized products for CellMark's customers where he not only divulged CellMark's confidential information and trade secrets but also assisted with "transitioning" the mill from making products for CellMark to supplying them to Fortex. [*Id.* at ¶ 53]

Separately, CellMark contends that Webster and Bowman attempted to deplete CellMark's inventory of certain specialized products which resulted in the company being unable to fulfill certain short-term orders, thus allowing Fortex to take these customers. [*Id.* at ¶ 51] Webster allegedly also purchased large amounts of unnecessary inventory that CellMark could not sell, causing CellMark to incur losses due to excess storage of inventory. [*Id.* at ¶ 51]

Finally, CellMark argues that while Bowman was still employed with the company, she began sending packages from Fortex's address and arranged for future orders with customers and suppliers to be made through Fortex. [*Id.* at ¶¶ 54-55] Bowman notified CellMark of her intent to resign on May 31, 2024, but before leaving, she allegedly took confidential business information and continues to use that information to Fortex's advantage. [*Id.* at ¶ 57] Similarly, Webster resigned from CellMark on June 7, 2024, and represented to the company

that he understood he was prohibited from soliciting CellMark's clients for one year. [Record No. at ¶¶ 58-59] DRC then informed CellMark that it intended to hire Webster but would not allow him to work on the accounts of customers which had previously been CellMark customers. [*Id.* at ¶ 61] The CEO of DRC also reaffirmed that Webster had not been involved in soliciting these customers, but the plaintiff contends that the representation was false and that Webster continues to work with the other defendants to solicit business from CellMark in violation of his restrictive covenants. [*Id.* at ¶ 68]

CellMark has filed suit against Webster, Bowman, Sohl, Fortex, and DRC alleging breach of fiduciary duty against Webster; aiding and abetting breach of fiduciary duty against Bowman, Sohl, Fortex, and DRC; breach of restrictive covenants against Webster; tortious interference with contractual relations against Bowman, Sohl, Fortex, and DRC; unfair competition against all of the defendants; breach of the Kentucky Uniform Trade Secrets Act ("KUTSA") against all of the defendants; breach of the Defendant Trade Secrets Act ("DTSA") against all of the defendants; and that all of the defendants engaged in a civil conspiracy. As noted above, Webster has moved to dismiss CellMark's claims against him [Record No. 16] while DRC has moved for judgment on the pleadings. [Record No. 26] Separately, Bowman, Sohl, and Fortex have also moved for judgment on the pleadings. [Record No. 32]

## II.

When evaluating a motion to dismiss under Rule 12(b)(6), courts examine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*quoting Twombly*, 550 U.S. at 556). Courts look to the substance of the entire complaint to determine if the claims are properly asserted and must be "construed so as to do justice." Fed. R. Civ. P. 8(e).

While a complaint need not contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions because "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And while a plaintiff is not required to plead facts showing that the defendant is likely to be responsible for the harm alleged, it must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Simply put, the plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (*citing Twombly*, 550 U.S. at 555). When reviewing a motion under Fed. R. Civ. P. 12(b)(6), the court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). However, it will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When evaluating a motion to dismiss, courts are generally limited to considering the pleadings, but they may consider certain items without converting the motion to one for summary judgment such as public records, exhibits attached to the complaint, and those attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R Civ. P. 12(c). *Elkins v. Extreme Products Group, LLC*, 2022 WL

- 5 -

409694 at *1 (E.D. Ky. February 9, 2022). "The primary distinction between a motion to dismiss for failure to state a claim [under Rule 12(b)(6)] and a motion for judgment on the pleadings [under Rule 12(c)] is one of timing." *Prudential Insurance Co. of America v. McFadden*, 504 F.Supp.3d 627, 632 (E.D.Ky. 2020). The court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). Thus, it must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570.)

### III.

### A.

CellMark contends that Webster violated his fiduciary duties by engaging in self-dealing, usurping corporate opportunities for himself, and directing potential clients to CellMark's competitors. A fiduciary relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to *act primarily for another's benefit* in matters connected with such undertaking." *Sallee v. Fort Knox Nat'l Bank, N.A.,* 286 F.3d 878, 892 (6th Cir.2002). It is the 'the highest order of duty imposed by law.'" *Abbott v. Chesley*, 413 S.W.3d 589, 600 (Ky. 2013) (*quoting Sallee*, 286 F.3d at 891. A plaintiff seeking to show a breach of fiduciary duty must prove "(1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation." *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013).

Generally, whether a fiduciary duty exists between the parties is a matter for courts to decide. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992). These relationships exist "under a variety of circumstances." *Henkin, Inc. v. Verea Bank & Trust Co.*, 566 S.W.2d 420, 424 (Ky. App. 1978) (*quoting Security Trust Co. v. Wilson*, 307 Ky. 152, 157 (1948)). They are present "when circumstances and the relationship of the parties show the parties understood and agree that confidence is reposed by one party and trust accepted by the other." *In re Sallee*, 286 F.3d 878, 893 (6th Cir. 2002). Generally, under Kentucky law, "a stockholder does not owe a fiduciary duty." *Feldman v. Pearl (In re Pearl*), Nos. 16-20305, 16- 2006, 2017 Bankr. LEXIS 616, at *18 (Bankr. E.D. Ky. Mar. 8, 2017). However, "[t]he employer and employee relationship is a well-recognized fiduciary relationship." *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 665 (E.D. Ky. 2009). Kentucky courts have found that a salesman who solicit contracts on behalf of a company and has access to confidential information is "in a position of trust." *Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, 2015 WL 520960, at *7 (W.D. Ky. Feb. 9, 2015).

Here, Webster contends that CellMark's breach of fiduciary duty argument fails because his status as a company shareholder is insufficient to create a fiduciary duty. He further argues that the plaintiff's Complaint is otherwise void of factual allegations from which the existence of a fiduciary duty can be inferred. [Record No. 16 at p. 5] Although his status as a shareholder, *standing alone*, is insufficient to give rise to a fiduciary duty, Webster held a position of trust within the company. As an employee, Webster had access to confidential information essential to CellMark's business strategy. And under the terms of his agreement, he agreed not to compete with CellMark or engage in any business activity beyond his obligations with the business. [Record No. 27 at P. 9]

Although a salesman like Webster does not necessarily owe a fiduciary duty to his employer, sales employees have been deemed to "owe a fiduciary duty to his or her employer if the "specific circumstances of his or her employment" so require. *Miles Farm Supply, LLC v. Helena Chem. Co.,* 4:06–CV–23R, 2008 WL 3010064, at *7 (W.D.Ky. Aug. 1, 2008) (*citing ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.,* 402 F.3d 700, 715–16) (6th Cir.2005)) *aff'd,* 595 F.3d 663 (6th Cir.2010).  Courts have found fiduciary duties exist in similar circumstances where employees had access to confidential information.  *See Stewart v. Ky. Paving Co.*, 557 S.W.2d 435, 438 (Ky.App.1997) (finding an employee in a position of trust because he solicited contracts on behalf of the company and had access to confidential information); *Drywall Co. v. Commonwealth Walls, Inc.*, 3:06–CV–372–S, 2008 WL 1897728, at *2 (W.D.Ky. Apr. 28, 2008)(holding a "branch manager" had a fiduciary relationship with his employer because he had access to the company's confidential information).

In *Community Ties of America, Inc. v. NDT Care Services, LLC*, 2015 WL 520960 at *7 (W.D.Ky. February 9, 2015), the Court found an employee's position of trust gave rise to a fiduciary duty when his employer required that he sign a confidentiality agreement.  The employee was included in executive-level strategy calls, had access to client information, autonomy in his decision-making, and had substantial access to confidential information. While the court recognized that "something more" than access to confidential information is not enough by itself to give rise to a fiduciary duty, it found the totality of the company's trust in the employee gave rise to a fiduciary duty.

In this case, CellMark has made sufficient allegations that it placed a similar level of trust in Webster by granting him access to CellMark's trade secrets, entrusting him information

- 8 -

about the company's business strategy, and providing him authority to solicit contracts on the company's behalf.  Additionally, by signing the Employment Agreement with CellMark, Webster acknowledged that he would be given "access to and become familiar with various trade secrets and confidential information…" [Record No. 27-2 at 7.1] Considering the totality of the circumstances, CellMark has plausibly alleged the existence of a fiduciary duty owed by Webster.

Thus, the next question is whether CellMark plausibly alleged a breach of Webster's fiduciary duty.  The Court finds that it has.  Webster appears to have engaged in substantial communication with CellMark's competitors and developed business relationships with them such as to drive potential clients from CellMark to DRC and Fortex.  He purportedly engaged in this alleged conduct over several years and did so after he had agreed not to engage in any business other than his work at CellMark.  The plaintiff claims that these efforts led to several long-term clients leaving CellMark and taking their business to its competitors, causing injury.  CellMark has met its burden at this stage in the proceedings to plausibly allege that Webster breached his fiduciary duties.  Therefore, Webster's motion to dismiss will be denied regarding Count I.

## B.

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must plead: (1) the existence and breach of a fiduciary duty; (2) the defendant substantially assisted or encouraged the breach; and (3) the defendant knew that the party's conduct breached its fiduciary duty. *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. Ct. App. 2016).  A party seeking to prevail on a claim that defendants have aided and abetted a breach of a fiduciary duty eventually must demonstrate that the parties had

- 9 -

"actual knowledge" of the underlying breach.  *Brunswick TKTKonnect, LLC v. Kavanaugh*, 661 F. Supp. 3d 698, 711 (W.D. Ky. 2023).

For the reasons previously discussed, the Court concludes that Webster owed CellMark a fiduciary duty.  Considering the facts most favorably to CellMark, it appears plausible that Webster was acting at the direction of DRC when he directed a long-term client to DRC.  When DRC attended a CellMark's client's conference at the plaintiff's expense, DRC was certainly aware that Webster was still employed by CellMark.  Knowing this, it is plausible that DRC worked with Webster in his efforts to direct customers from CellMark to that entity.  CellMark also alleges DRC notified CellMark of its intent to hire Webster while simultaneously representing that Webster would not be involved in managing DRC's relationship with any customers moving business from CellMark to DRC until at least June 6, 2025 (one year after Webster's employment with CellMark ended).  This activity occurred while Webster was allegedly working with at least one of CellMark's customers to bring their business to DRC, and CellMark contends this conduct continues to the present day.  At this stage in the proceedings, CellMark has met its burden regarding the contention that DRC aided and abetted Webster in breach fiduciary duties owed to CellMark.

CellMark also alleges that Bowman, Sohl, and Fortex (the "Fortex defendants") aided and abetted Webster in breaching his fiduciary duties.  However, the Fortex defendants claim that, even if Webster owed fiduciary duties to Cellmark, they had no knowledge that his activities were in breach of those duties.  However, when construing the facts most favorably to CellMark, this contention makes little sense as Bowman and Sohl knew Webster was employed by CellMark when they worked with him to solicit CellMark's clients for Fortex.  Fortex clearly had some knowledge of the nature of Webster's actions since Webster was

- 10 -

working with Bowman and Sohl for Fortex's benefit and to his employer's detriment. As Sohl was, and Webster later became, employed by Fortex, this knowledge is imputed to Fortex.

Further, the Complaint contains an allegation that Bowman worked with Webster to reduce inventory levels so that CellMark's competitors would need to look elsewhere to fulfill orders, while also ordering significant inventory that CellMark did not need, causing CellMark to incur unnecessary costs. [Record No. 1 at p. 48-49] Additionally, CellMark claims that while Webster and Sohl visited a paper mill which supplied CellMark, Webster worked to transition the mill to supply Fortex. Taking these facts in the light most favorabe to CellMark, CellMark has plausibly alleged that Bowman, Sohl, and Fortex aided and abetted Webster's breach of his fiduciary duties to CellMark.

### C.

A party seeking to demonstrate that a contract has been breached must show the "(1) existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of contract." *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 774 (E.D. Ky. 2019) (*quoting Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009)). To prevail on an actionable breach of contract claim, the plaintiff must first show the "existence of a valid contract between the parties*." Awp, Inc. v. Safe Zone Servs.*, LLC, No. 3:19-CV-00734-CRS, 2022 U.S. Dist. LEXIS 59764, at *18 (W.D. Ky. Mar. 31, 2022) (*citing Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007). A party must further "identify[] and present[] the actual terms of the contract allegedly breached." *KSA Enters. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 460 (6th Cir. 2019) (*citing Northampton Restaurant Group, Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012)). However, dismissal of a breach of contract claim is improper when a party describes

- 11 -

the contents of a contract such that they suggest the contract exists. *Barbourville Diagnostic Imaging Ctr. v. Philips Med. Sys., Inc.*, No. CIV. 12-191-GFVT, 2013 WL 4459860, at \*4 (E.D. Ky. Aug. 16, 2013); *see also Friends Christian High Sch. v. Geneva Fin. Consultants*, 39 F. Supp. 3d 58, 62 (D.D.C. 2014) ("Contract claim will not be dismissed for failure to attach the contract to the complaint"). If a document is referred to in the plaintiff's pleadings and integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012).

Here, CellMark references two contracts in its complaint, the "Asset Purchase Agreement" and the "Employment Agreement." [Record No. 1 at ¶¶ 20-21] It then claims "Webster and CellMark agreed to certain restrictive covenants, including not to compete against CellMark and to refrain from soliciting CellMark's customers" and that "Webster breached these covenants by competing with CellMark and soliciting its customers." [*Id.* at ¶¶ 78-81] These contracts are central to CellMark's claim, and CellMark has alleged the provisions with sufficient specificity such that the claim survives dismissal. CellMark describes the existence of non-compete provisions such that the nature of the claim is clear and it describes the defendant's actions of diverting customers away from the company to its competitors, causing injury to the plaintiff. This level of specificity meets federal pleading standards. For Cellmark to overcome Webster's motion to dismiss, the Court need not consider the additional information provided in the plaintiff's response to determine the existence of these agreements, and the subsequent alleged breach.

Next, Webster's reliance on *Northhampton Restaurant Group, Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012), is misplaced. There, the Sixth Circuit found that

the allegations regarding a specific term outside the main purpose of a contract had been breached. Here, however, Webster violated the central purpose of the contract which was to prevent him from diverting corporate opportunities from CellMark. Unlike *Northhampton*, CellMark has adequately described the central provisions of the agreements it alleges Webster breached and it has provided a sufficient basis to survive a motion to dismiss.

**D.**

To establish a claim for tortious interference with contract under Kentucky law, a plaintiff must show: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intent to cause a breach of that contract; (4) that the defendant's actions in fact caused a breach of the contract; (5) that the plaintiff suffered damages as a result of the breach; and (6) that the defendant enjoyed no privilege or justification for its conduct. *Davenport Extreme Pools and Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 155 (Ky. Ct. App. 2024).

The primary contention for the defendants' arguments in favor of judgment on the pleadings regarding CellMark's claim for tortious interference with contract is that CellMark has failed to plausibly allege the existence of a contract between CellMark and Webster. But for the reasons previously discussed, CellMark has sufficiently alleged the existence of such contracts. Regarding DRC's motion for judgment on the pleadings, DRC's only basis for judgment is that CellMark failed to identify the basis of a contractual agreement between CellMark and Webster. Not only has CellMark met its burden in this regard, but it also plausibly alleges that Webster, in coordination with DRC, worked to divert customers from CellMark to DRC. As such, DRC's motion for judgment on the pleadings with respect to tortious interference with contract will be dismissed.

- 13 -

Regarding the Fortex defendants, Sohl, Webster, and Fortex, worked closely with Webster during his employment with CellMark.  Given this proximity and their former employment with CellMark, it is plausible to infer that they were aware of the restrictions placed on Webster as alleged in the Complaint.  Further, even if Fortex and Sohl were not aware of the restrictions prior to Webster's resignation from CellMark, CellMark notified Fortex of Webster's obligations, which directly implies it knew about the agreements, yet continued to work with Webster to direct customers from CellMark to Fortex.  *See Brunswick TKTKonnect, LLC v. Kavanaugh*, 661 F. Supp. 3d 698, 712 (W.D. Ky. 2023) (finding allegation of awareness of Operating Agreement sufficient for knowledge element of tortious interference claim).  As such, CellMark has plausibly alleged that the defendants interfered with CellMark's contractual rights with Webster.

### E.

The tort unfair competition under Kentucky's common law consists of either (1) injuring the plaintiff by taking his business or impairing his good will, or (2) unfairly profiting by the use of the plaintiff's name, or a similar one, in exploiting his good will.  *Covington Inn Corp. v. White Horse Tavern, Inc.*, 445 S.W.2d 135, 139 (Ky. 1969).   A plaintiff seeking to recover under this theory must show "actual or intended deception of the public for business reasons." *Veritiv Operating Co. v. Phx. Paper Wickliffe, LLC*, 2021 U.S. Dist. LEXIS 243049, at *19 (W.D. Ky. Dec. 20, 2021).  The intended deception must "relate to the source or origin of the goods or services."  *Act for Health*, 784 F. App'x at 301.  This Court has previously cautioned that it is "overwhelmingly hesitant" to extend liability beyond circumstances "where consumers are deceived by the defendant's efforts to gain from another's business reputation." *See Allstate Ins. Co. v. Hamm*, 2020 U.S. Dist. LEXIS 49730, 2020 WL 1431953, at *14 (E.D.

Ky. Mar. 23, 2020). And the Sixth Circuit has held "Kentucky's concept of an unfair competition claim is much narrower" than that found in other jurisdictions. *Act for Health*, 784 F. App'x at 302 (6th Cir. 2019)

Here, CellMark has failed to plausibly state a claim for unfair competition. it contends the defendants improperly used CellMark's goodwill in the industry, together with Webster and Bowman's roles with the company, to divert customers to CellMark's competitors. [Record No. 1 at ¶¶ 88-89] It further alleges that the defendants deceived CellMark's existing and potential customers "into believing that they needed to make purchases from Fortex and/or DRC and that CellMark could not fulfill their orders." [*Id.* at ¶ 92] While these actions may have been deceptive, they do not meet the standard for unfair competition under Kentucky law. CellMark does not allege any act by any defendant intended to deceive the public. And even taking the facts in a light most favorable to the plaintiff and taking CellMark's claims that the defendants deceived customers into thinking CellMark could not fulfill their orders, such deception does not relate to the origin of goods or services. There is nothing in CellMark's Complaint that alleges deception related to the origin of CellMark's goods or services. Therefore, Count V of CellMark's complaint will be dismissed as to all defendants.

## F.

The Kentucky Uniform Trade Secrets Act, ("KUTSA") creates a private right of action for recover damages flowing from misappropriation of trade secrets. KRS 365.884(a). "To prevail on a KUTSA claim, a plaintiff must show that: (1) a trade secret exists; and (2) that a trade secret has been misappropriated." *N. Harris Comput. Corp. v. DSI Invs., LLC*, 608 F. Supp. 3d 511, 523 (W.D. Ky. 2022). Trade Secret information is information that: (1) "[d]erives independent economic value, actual or potential, from not being generally known

to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"; and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." KRS 365.880(4).  "Similar to the DTSA, a trade secret under Kentucky law requires that the information at issue (1) have independent economic value, (2) not be generally known or readily ascertainable by proper means, and (3) be the subject of reasonable efforts to maintain its secrecy." *C-Ville Fabricating, Inc. v. Tarter*, 2019 WL 1368621, at *14 (E.D. Ky. Mar. 26, 2019).  The Sixth Circuit has not articulated a single definition of what constitutes reasonable measures in a misappropriation claim. *United States v. Shanshan Du*, 570 F. App'x 490, 500 (6th Cir. 2014).  As part of the inquiry, courts have considered "physical security measures at facilities and confidentiality agreements," among other efforts "relating to sensitive information." *Id.* (*citing United States v. Howley*, 707 F.3d 575, 579 (6th Cir. 2013)).

   If a party discloses a trade secret to others who are under no obligation to protect the confidentiality of the information, or [is] otherwise publicly disclose[d] . . ., [the] proprietary right is extinguished."  *BDT Products, Inc. v. Lexmark Intern., Inc*., 274 F.Supp.2d 880, 891 (E.D.Ky. 2003).  Further, "information that is readily obtainable by proper means, . . . or that may be obtained through legitimate channels . . . is not a protected trade secret." *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 856 (W.D. Ky. 2016).  "Whether a particular type of information constitutes a trade secret is a question of fact." *Id.* (*citing Fastenal Co. v. Crawford*, 609 F.Supp.2d 650, 671 (E.D. Ky. 2009)).

   In determining whether information constitutes a trade secret, Courts also look at the efforts undertaken by a company to "keep information confidential to determine whether that information qualified as a trade secret." *See Ecolab, Inc. v. Shanklin*, 2023 WL 4365933 at *4

- 16 -

(W.D. Ky. May 12, 2023) *citing Church Mut. Ins. Co. v. Smith*, 2015 WL 3480656, at *4 (W.D. Ky. June 2, 2015) ("Trade secrets are valuable because they are secret—the secret information gives the user a competitive edge in a market for the very reason that the information is unknown to competitors."). Kentucky Courts have previously deemed information regarding clients and business processes that are particularly valuable in a given industry to be a trade secret when the information is not publicly available. *See Cmty. Ties of Am., Inc. v. NDT Care Servs. LLC*, 2015 WL 520960, at *11 (W.D. Ky. Feb. 9, 2015). Courts have also found pricing information can be considered a trade secret when the information itself is of economic value to the company and only limited people have access to the information. *Alph C. Kaufman, Inc. v. Cornerstone Indus. Corp.*, 540 S.W.3d 803, 818 (Ky. App. 2017) (finding a company's bid documents, bid preparation tools, and pricing information were trade secrets under KUTSA). The court in *Kaufman* reasoned that allowing this information to fall into competitors' hands would allow competitors to undercut the plaintiff, and thus the information is a trade secret because it gives the user a competitive edge because the information is "unknown to competitors." *See Id., citing Church Mut. Ins. Co. v. Smith,* 2015 WL 3480656, at *4 (W.D. Ky. June 2, 2015).

Here, CellMark alleges the defendants misappropriated CellMark's trade secrets, principally the "margins and sourcing of particular products." [Record No. 1 at p. 100] CellMark's Complaint repeatedly references its efforts to keep information about its pricing strategy, which it perceives as a competitive advantage, and it notes the importance of this information in the paper industry. CellMark contemplated this information in the contracts it entered with Webster, and CellMark repeatedly alleged that it deemed this information to be a "trade secret" with economic value.

- 17 -

The information is neither publicly known information nor information that can be ascertained by proper means. It also does not appear to be information that could be calculated or identified simply by looking at the rates paid for by certain customers. Given the nature of the information, the nature of the industry, and CellMark's efforts to prevent the information's disclosure, CellMark has plausibly alleged the existence of a trade secret. Therefore, the Court will address whether the trade secret has been misappropriated.

CellMark alleges that Webster misappropriated its trade secrets by sharing "confidential inventory levels and confidential specification sheets" from its customers with its competitors." [Record No. 27 at p. 16] The Complaint indicates that Webster divulged this information to CellMark's competitors, despite the company's efforts to bind him to confidentiality agreements that restricted his ability to disclose the information. Given this disclosure, CellMark's competitors were able to leverage the information, potentially enabling them to take CellMark's long-term clients. CellMark has plausibly alleged that Webster voluntarily disclosed this information, thus putting CellMark at a competitive disadvantage. As such, the plaintiff has plausibly alleged Webster violated the KUTSA.

DRC also has moved for judgment on the pleadings regarding CellMark's allegations that DRC violated the KUTSA. As discussed previously, CellMark has plausibly alleged the existence of a trade secret in this context. Thus, the question becomes whether DRC misappropriated a trade secret. Taking the facts in the light most favorable to CellMark, the plaintiff, the Court concludes that it has failed to adequately assert a misappropriation on the part of DRC. CellMark principally contends that DRC encouraged Webster to breach his fiduciary duties and disclose CellMark's trade secrets, that DRC used those trade secrets, and

that DRC made false statements to CellMark to conceal that it misappropriated CellMark's trade secrets. [Record No. 1 at 64, 67, and 75]

A defendant's passive receipt of trade secrets without soliciting or using them is insufficient to show misappropriation of trade secrets. *Smart & Assocs., LLC v. Indep. Liquor (NZ) Ltd.*, 226 F. Supp. 3d 828, 856 (W.D. Ky. 2016) ("The mere possession of an otherwise protected trade secret without any use does not constitute misappropriation within the meaning of the UTSA."). And here, CellMark's Complaint is devoid of any facts purporting to show that DRC solicited trade secrets and used them for their own economic benefit. If anything, a generous reading of the Complaint would support the claim that DRC may have benefited from Webster's misappropriation of trade secrets. However, there is no evidence that DRC solicited or actively used CellMark's trade secrets. Thus, Count VI of CellMark's complaint will be dismissed as to DRC.

Defendants Bowman, Sohl, Fortex also have moved for judgment on the pleadings regarding CellMark's claims under the KUTSA. [Record Nos. 26 & 32] As is the case with CellMark's claim of a KUTSA violation against DRC, it has failed to allege a KUTSA violation with respect to Fortex and Sohl. Even assuming (and it is not clear from CellMark's Complaint that this is the case) that Fortex and Sohl were in possession of CellMark's trade secrets, there are insufficient allegations that Fortex took action to acquire those trade secrets by improper means. As previously discussed, passive receipt of trade secrets is insufficient to demonstrate misappropriation, even when a defendant is in possession of a plaintiff's trade secret. Assuming Fortex and Sohl were in possession of CellMark's confidential information, the Complaint does not allege they used the information improperly. CellMark essentially alleges that Sohl regularly communicated with Webster as he tried to divert business from

- 19 -

CellMark to Fortex, but the Complaint does not allege that the subject of their communications involved these secrets.

CellMark's Complaint provides slightly more detail regarding Bowman's activities than the other Fortex defendants. CellMark asserts that, "[u]pon information and belief, Bowman took with her CellMark's confidential information and trade secrets, and she has continued to use CellMark's confidential information as an employee of Fortex to divert additional customers to Fortex." [Record No. 1 at ¶ 57] But this is the only allegation CellMark makes about Bowman's use of trade secrets. While the Complaint discusses her activities diverting business from CellMark to Fortex, CellMark does not identify any information allegedly taken by Bowman or explain how she used this information to the detriment of CellMark. As such, CellMark has also failed to plausibly allege Bowman violated the KUTSA.

In summary, CellMark has plausibly alleged the existence of a trade secret and has plausibly alleged those trade secrets were misappropriated by Webster in violation of the KUTSA. However, CellMark has failed to adequately allege misappropriation by DRC, Fortex, Bowman or Sohl. Therefore, CellMark's claims for a violation of the KUTSA against these four defendants will be dismissed.

## G.

Similarly, CellMark alleges that "Webster and Bowman, at the urging of Fortex, Sohl, and/or DRC, misappropriated CellMark's trade secrets, which include margins and sourcing of particular products" in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"). [Record No. 1 at ¶ 106] The standards a plaintiff must satisfy to state claims under the KUTSA and the DTSA are "nearly identical." *C-Ville Fabricating, Inc. v. Tarter*, 2019 WL 1368621, at *14 (E.D. Ky. Mar. 26, 2019). The two statutes are thus treated as having the

same legal standard for establishing the existence of a trade secret. *Veritiv*, 2021 U.S. Dist. LEXIS 243049, at *7. Therefore, this Court will evaluate CellMark's DTSA claims under the same standard used to evaluate its KUTSA claims. To show a misappropriation of the trade secret under the DTSA, a plaintiff must similarly show "an unconsented disclosure or use of a trade secret by one who used improper means to acquire the secret; or, at the time of the disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret." *C-Ville Fabricating*, 2019 WL 1368621, at *12.

For the reasons previously discussed, the Court concludes that information regarding CellMark's pricing margins, identities of certain suppliers use, and various other confidential information constitute trade secrets and that Cellmark took reasonable steps to protect the information by using confidentiality agreements and limiting access to the information. Similarly, at this stage in the proceedings, CellMark has plausibly alleged that Webster misappropriated CellMark's trade secrets.

Webster agreed that CellMark owned trade secrets and agreed to keep those secrets in confidence as part of his employment agreement. Webster allegedly took the information and shared it with CellMark's competitors. Given the nature of the industry and CellMark's business strategy, this information is of vital economic importance to CellMark. CellMark took reasonable measures to protect this information from disclosure, but it the company alleges that Webster violated his agreements and attempted to provide confidential information to the plaintiff's competitors. As such, CellMark has plausibly alleged Webster violated the DTSA.

- 21 -

However, the Complaint does not contain sufficient allegations to demonstrate that Bowman, Webster, Sohl, or Fortex misappropriated CellMark's trade secrets. Taking the facts most favorably to CellMark, the Complaint would support claims that these defendants came into possession of CellMark's trade secrets passively. But once in possession of the trade secrets, the Complaint does not sufficiently allege that the defendants used the information to their advantage. Therefore, Count VII of the Complaint will be dismissed as to Bowman, Webster, Sohl, and Fortex.

**H.**

A plaintiff seeking to prove a civil conspiracy must offer proof of "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. App. 2008) (quoting *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936)) (internal quotation marks omitted). "Civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, 2010 Ky. App. Unpub. LEXIS 555, at *13 (Ky. App. July 9, 2010) (*citing Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (1945). If there is no underlying tort for a claim of civil conspiracy to be based upon, it "cannot survive as a matter of law." *Stonestreet Farm, LLC v. Buckram Oak Holdings*, 2010 WL 2696278, at *14 (Ky. Ct. App. July 9, 2010).

CellMark's allegation of civil conspiracy against all defendants incorporates by reference its claims of breach of fiduciary duty and unfair competition. Thus, it has identified underlying torts upon which the civil conspiracy claim is based. As previously discussed,

- 22 -

CellMark's breach of fiduciary duty claims have been plausibly alleged.  At this stage of the proceedings, the plaintiff's allegations are sufficient to proceed with a claim for civil conspiracy and the defendants' motions to dismiss this claim will be denied.

## IV.

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

1.      Defendant Robert Webster's motion to dismiss [Record No. 16] is **GRANTED** regarding the plaintiff's claims for unfair competition but **DENIED** as to all other counts.

2.      Defendant DRC Industries' motion for judgment on the pleadings [Record No. 26] is **GRANTED** regarding the plaintiff's claims for unfair competition and violations of the KUTSA and DTSA but **DENIED** as to plaintiff's claims for aiding a betting breach of fiduciary duty, tortious interference with contractual relations, and civil conspiracy.

3.      Defendants Dinah Bowman, Goran Sohl, and Fortex Americas, LLC's motion for judgment on the pleadings [Record No. 32] is **GRANTED** regarding plaintiff's claims unfair competition and for violations of the KUTSA and DTSA but **DENIED** as to plaintiff's claims for aiding a betting breach of fiduciary duty, tortious interference with contractual relations, and civil conspiracy.

Dated: May 15, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky