UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| CELLMARK, INC., | ) | |
| | ) | |
| Plaintiff, | ) Civil Action No. 2:24-cv-00181-SCM-CJS | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROBERT WEBSTER, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff CellMark, Inc. retained an expert, Jay Cunningham, to show that it suffered various economic damages arising from its claims in this case, and the Defendants retained two rebuttal experts, Joshua Shilts and Robert Kester.  Now CellMark moves to exclude certain testimony from the Defendants' rebuttal experts, [Dkt. 140, 142], arguing they may not testify about: (1) legal opinions concerning Cunningham's testimony; (2) the validity of Cunningham's assumptions relating to an exclusivity agreement; (3) the validity of Cunningham's assumptions relating to one of CellMark's former customers, Duro-Last, Inc.; (4) certain quantified critiques of Cunningham's damages calculations; and (5) critiques based on Cunningham's failure to consider a decline in the spirits industry.  The Court agrees the Defendants'

experts may not testify as to legal conclusions or the truth of particular facts, but the rest of CellMark's objections are denied or rendered moot.[1]

## I.     Facts[2]

CellMark brings several claims against Dinah Bowman, Göran Sohl, and Fortex Americas, LLC (collectively the "Fortex Defendants"), as well as Rob Webster[3] arising out of the unamicable end of Webster's employment at CellMark in 2024. [Dkt. 64, Am. Compl.]. After the Court resolved the parties' motions for summary judgment, CellMark's remaining claims include: (I) breach of fiduciary duty (against Webster); (II) breach of restrictive covenants (against Webster); (III) tortious interference with contractual relations (against Bowman, Sohl, and Fortex); (IV) violation of the Kentucky Uniform Trade Secrets Act (against all Defendants); (V) violation of the Defend Trade Secrets Act (against all Defendants); and (VI) civil conspiracy (against all defendants). [*Id.* at 13–18]. Webster also brings a

---

[1] CellMark also argues the Defendants' experts may not testify about Webster's counterclaims, the compensation Webster should have received, or the impact that CellMark's write-downs had on Webster's compensation. [*See* Dkt. 142, CellMark Mot. to Excl., at 1, 14]. But the Court's Memorandum Opinion and Order on summary judgment, [Dkt. 218], moots these issues, which arise out of counterclaims that have now been dismissed. So the opinions expressed in Section XV of Shilts's report will be excluded as irrelevant. *See* Fed. R. Evid. 401, 402. The Defendants' proposed expert testimony does not implicate the counterclaim for tortious interference.

[2] For a more complete description of the facts, see the Court's Memorandum Opinion and Order on summary judgment. [Dkt. 218 at 3–15].

[3] CellMark also sued DRC Industries, Inc., but they entered into a settlement agreement and DRC was dismissed from the case. [Dkt. 107, Joint Mot. to Dismiss DRC; Dkt. 147, Dismissal Order].

counterclaim against CellMark for tortious interference with a prospective business advantage.  [Dkt. 65, Webster Answer & Countercls. at 40–41; Dkt. 218].

Cunningham—CellMark's expert—prepared a Report, [Dkt. 140-39], and was deposed, [Dkt. 95], regarding his opinions on CellMark's economic damages in this case.[4]  He concludes that CellMark's total lost profits are $4,926,697.00 "based upon the incremental profits that CellMark did not earn due to the loss of certain customer relationships and contracts to Fortex and DRC who allegedly benefited from Webster, Bowman, and Mr. Sohl's alleged wrongful conduct."  [Dkt. 140-39 at 5].

Webster retained Shilts to rebut Cunningham's opinions, and the Fortex Defendants retained Kester for the same purpose.  They both prepared Reports, [Dkt. 140-42; Dkt. 140-40], criticizing Cunningham's assumptions, methods, and the data periods that underlie his damages model.  [*See generally* Dkt. 140-42; Dkt. 140-40]. Shilts and Kester focus on critiquing Cunningham's opinions rather than providing their own alternative damages model.

## II.    Analysis

On a motion to exclude expert testimony, "[i]t is the proponent of the testimony that must establish its admissibility by a preponderance of proof."  *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993)).  Federal Rule of Evidence 702 provides that an expert witness may only offer an expert opinion if:

> [1] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

---

[4] Cunningham also calculates unjust enrichment in the form of disgorgement, but the Court addresses this issue in a separate Order.

in issue; [2] the testimony is based on sufficient facts or data; [3] the testimony is the product of reliable principles and methods; and [4] the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

And Rule 703 permits an expert to base his or her opinion on facts or data that is otherwise inadmissible as long as "experts in the particular field would reasonably rely upon those kinds of facts or data in forming an opinion on the subject."  Fed. R. Evid. 703.  Ultimately, the Court acts as a gatekeeper to determine if proposed expert testimony is sufficiently reliable and relevant for a jury to consider it.  *Daubert*, 509 U.S. at 596–97.

### A.    Shilts and Kester may not testify about any legal opinions.

CellMark argues that Shilts's and Kester's reports are littered with legal opinions and that they must be prohibited from testifying as to those points at trial. [Dkt. 142 at 15].  Webster and the Fortex Defendants respond that their rebuttal experts merely criticize Cunningham's opinions, which is permissible.  [Dkt. 149, Webster's Resp. to CellMark's Mot. to Exclude, at 8–9; Dkt. 151, Fortex Defs.' Resp. to CellMark's Mot. to Exclude, at 4–5].  CellMark has the better argument here.

Shilts's Report and Kester's Report both contain conclusion sections that summarize their criticisms of Cunningham's Report.  [Dkt. 140-42 at 21; Dkt. 140-40 at 17].  Shilts's conclusion reads:

> Based upon my review of the information received and the analyses performed, it is in my opinion that the Cunningham Report *cannot be relied upon*. Its lost profits calculation is *speculative, unsupported by sufficient data, and fails to incorporate the necessary analyses required for a credible opinion.* Key assumptions, such as the selection of damages periods, projections of but-for gross profit, and incremental expense calculations, are *not grounded in objective evidence* or industry

4

realities. As a result, the report's conclusions *lack reliability and are not rooted in economic reality.*

[Dkt. 140-42 at 21 (emphases added)].  And Kester's conclusion reads:

There are several areas of critique of the Cunningham Report as described herein. They include the selection of the damages periods, projections of the but-for-gross profit, and calculation of the incremental expenses. Based on the information provided to me by Counsel, my experience, education and training, and the analyses set forth here within my report, as of the date of this report it is my conclusion to a reasonable degree of professional certainty that the Cunningham Report's lost profits calculation is flawed, lacks the necessary analyses to render a *credible* opinion, *is speculative, and thus cannot be relied upon.*

[Dkt. 140-40 at 17 (emphases added)].  The italicized language is beyond the bounds of permissible expert testimony.

An expert may not testify on the law or state "impermissible legal conclusions." *United States v. Mazumder*, 800 F. App'x 392, 395 (6th Cir. 2020) (quoting *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 592–93 (6th Cir. 2014)).  While experts may offer testimony that "embrace[s] an ultimate issue," they may not do so in way that invokes legal terminology that would confuse the jury and invade the court's province of saying what the law is.  *Id.* (quoting *Killion*, 761 F.3d at 592); *see also Gillispie v. City of Miami Township*, No. 3:13-cv-416, 2022 WL 14758379, at *6 (S.D. Ohio Oct. 26, 2022) ("It would both impinge on this Court's gatekeeping function under *Daubert* and confuse the jury to allow an expert witness to opine on the relevance of another witness' testimony.").  And whether expert testimony is speculative or can be relied upon are issues of law for the Court to resolve.  *See Martin v. Polaris, Inc.*, No. 24-5852, 2025 WL 3094123, at *7 (6th Cir. Nov. 4, 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

The conclusion sections of the Defendants' Reports veer into the realm of legal opinion by calling Cunningham's opinion speculative, unreliable, and unsupported by sufficient data. [Dkt. 140-42 at 21; Dkt. 140-40 at 17]. Shilts and Kester can testify to the reasons they believe Cunningham's testimony is "unreliable" or "speculative" or "unsupported by sufficient data," but those conclusions themselves are inadmissible. Proclaiming Cunningham's testimony to be "unreliable" or "speculative" or "unsupported by sufficient data" would be an invasion of the Court's province to make legal conclusions. *See Graystone Funding Co., LLC v. Network Funding, L.P.*, 598 F. Supp. 3d 1228, 1249 n.10 (D. Utah 2022) (citing *United States v. Archuleta*, 737 F.3d 1287, 1296 (10th Cir. 2013)). Likewise, Shilts and Kester cannot invade the province of the jury by opining on the weight and credibility to be ascribed to Cunningham's testimony. *See Fair Isaac Corp. v. Fed. Ins. Co.*, 447 F. Supp. 3d 857, 881 (D. Minn. 2020) (citing *Honeywell Int'l, Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 1010–11 (D. Minn. 2014)). It is up to the jurors to determine for themselves whether—or to what extent—Cunningham's opinions should be credited. Shilts and Kester can state opinions that suggest the answer to that question or that give jurors the information needed to draw their own inferences on that issue, but they cannot directly proclaim Cunningham's opinions to be lacking in credibility. *See Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019). Thus, the Court grants CellMark's motion to exclude testimony from Shilts and Kester that invades the province of the Court by stating legal opinions and invades the province of the jury by telling it how it should weigh the evidence.

6

**B.    Shilts and Kester may critique Cunningham's reliance on assumptions regarding the exclusivity agreement, but they may not opine as to the ultimate truth of those assumptions.**

Next, CellMark argues that Shilts and Kester may not testify about whether Cunningham correctly assumed for his damages model that CellMark would have renewed an exclusivity agreement. [Dkt. 142 at 16]. In CellMark's view, Shilts's and Kester's testimony would necessarily conclude that certain facts are true, which is impermissible. [*Id.*]. According to the Defendants, however, their experts' testimony would be used to critique Cunningham's opinions and the assumptions underlying them by pointing out evidence that Cunningham failed to consider—not to tell the jury what facts it should find. [Dkt. 149 at 10; Dkt. 151 at 5]. CellMark is correct that the Defendants' experts may not testify about the truth of certain facts or tell the jury how it should weigh the evidence, but that does not appear to be what Shilts and Kester are planning to do.

Shilts and Kester both criticize Cunningham's Report for assuming that CellMark would have renewed its exclusivity agreement with Asia Pulp and Paper but for Webster's failure to renew the agreement. [Dkt. 140-40 at 10; 140-42 at 12]. According to Shilts and Kester, this assumption "significantly increase[s] the damages period and accordingly the lost profits determined in the Cunningham Report." [Dkt. 140-40 at 10; Dkt. 140-42 at 12 ("Cunningham's exclusivity agreement assumptions extend the damage period an additional 10 months and increase lost gross profits by $979,538.")]. So Shilts and Kester suggest that Cunningham should have considered the effect on his damages model in a world where CellMark chose

7

not to renew the exclusivity agreement completely separate from anything Webster did.  [Dkt. 140-40 at 10–11; Dkt. 140-42 at 12].

Experts may not testify about the truth of a fact in the record, but they "may express an opinion that is based on facts that the expert assumes." *Williams v. Illinois*, 567 U.S. 50, 57 (2012), *abrogated on other grounds by Smith v. Arizona*, 602 U.S. 779, 789 (2024); *see E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1048 (E.D. Tenn. 2015).  Ultimately, "the law considers lay jurors just as capable as a Princeton-and-Yale graduate to decide whether evidence establishes some fact." *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 12748012, at *1 (N.D. Ohio July 16, 2015) (citing *Rosenfeld v. Oceania Cruises, Inc.*, 682 F.3d 1320, 1340 (11th Cir. 2012)).  But "'a well-accepted way to criticize damages estimates' is for a rebuttal expert to 'testify that, while the expert's report … assumes … facts, X, Y, and Z, the expert's analysis is seriously flawed if the jury does not accept X, Y, and Z as true.'" *Graystone Funding Co., LLC*, 598 F. Supp. 3d at 1247 (quoting *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-61490-Civ-COOKE/TURNOFF, 2011 WL 2295269, at *5 (S.D. Fla. June 7, 2011) (emphases omitted)).  And this appears to be the way in which Shilts and Kester intend to use the disputed evidence regarding the exclusivity agreement.

It is fair game for Shilts and Kester to try to undermine the assumptions that Cunningham made in support of his damages model.  There is nothing improper about rebuttal experts attempting to knock down the foundations that support an opposing expert's opinions.  So if Cunningham is allowed to assume that the

exclusivity agreement would have been renewed but for Webster's conduct, then Shilts and Kester must be allowed to explain to the jury why they believe that assumption is flawed and what impact it had on Cunningham's damages calculations. But Shilts and Kester must avoid testifying about whether it is true that the exclusivity agreement should have been renewed or whether it would or would not have been renewed but for Webster's conduct. For example, Shilts and Kester may not testify that "CellMark would not have renewed the exclusivity agreement with Asian Pulp and Paper," but they could say that "Cunningham failed to consider that CellMark might not have renewed the exclusivity agreement," and they could also explain how they believe that affected Cunningham's damages calculations.

Accordingly, the Court denies CellMark's motion to the extent it mischaracterizes the Defendants' Reports. Shilts and Kester may critique the assumptions that Cunningham relied upon regarding the exclusivity agreement. But the Court grants the motion to the extent Shilts and Kester intend to testify that the evidence shows the exclusivity agreement would not have been renewed in any event and to the extent they intend to testify that Cunningham's opinions are not based on truthful or objective evidence. If the jury is to believe that Cunningham's opinions are not supported by truthful or objective evidence, it must reach that conclusion on its own in light of its evaluation of the totality of the evidence. Shilts and Kester can help the jury come to that conclusion by pointing out perceived flaws in Cunningham's analysis—including the reliance on purportedly flawed assumptions— but they cannot reach that conclusion for the jury. *See Babb*, 942 F.3d at 317.

9

**C.   Similarly, Shilts may critique Cunningham's reliance on assumptions about continued business with Duro-Last, but he may not opine as to the ultimate truth of those assumptions.**

Just like its argument regarding the exclusivity agreement, CellMark also argues that Shilts cannot testify that Duro-Last wanted to consolidate its suppliers because that would amount to improper expert testimony regarding the truth of a fact.  [Dkt. 142 at 17].  Webster responds that Shilts uses this fact to show what Cunningham failed to consider in his damages model, just like with the exclusivity-agreement issue.  [Dkt. 149 at 11].  The Court reaches the same conclusion on this argument as with CellMark's argument above concerning the exclusivity agreement.

Shilts's Report says that his "understanding is that Duro-Last wanted to consolidate suppliers" and that this could have reduced CellMark's lost profits attributable to Duro-Last.  [Dkt. 140-42 at 14].  The heading for this section reads: "Cunningham failed to consider external factors that may have impacted CellMark sales to Duro-Last, including Duro-Last's decision to consolidate suppliers and buy directly from DRC."  [*Id.*].  This portion of Shilts's opinion attacks Cunningham's assumption that "100% of the decline in sales [to Duro-Last] is attributable to Webster."  [*Id.*].

It is true that Shilts may not testify about the truth of a fact, *Williams*, 567 U.S. at 57, but that is not what he did in his Report.  Shilts makes it clear that his testimony as a rebuttal expert will criticize Cunningham's opinion on damages—nothing more.  [Dkt. 140-42 at 3].  But the same concerns for the exclusivity-agreement issue apply here.  Shilts's testimony must not state whether it is true that

10

Duro-Last allegedly wished to consolidate suppliers or that Cunningham's opinions are not supported by truthful or objective evidence.

Accordingly, the Court denies CellMark's motion to the extent it mischaracterizes Shilts's Report. Shilts may critique the assumptions that Cunningham relied upon regarding the volume of business that CellMark would have continued to receive from Duro-Last. But the Court grants the motion to the extent Shilts intends to testify that the evidence shows that Duro-Last desired to consolidate suppliers and therefore would not have continued to place orders with CellMark. Likewise, Shilts cannot testify that the evidence shows that Webster's conduct could not have caused any damages to CellMark. Nor can Shilts testify that Cunningham's opinions are not based on truthful or objective evidence as they relate to Duro-Last.

**D. Shilts and Kester may testify about CellMark's damages, including by providing quantified examples of how they believe Cunningham's calculations overstate the potential damages.**

CellMark says that the Defendants' experts should not be allowed to testify to the total amount of damages that CellMark suffered or what the damages period should be because it would be testimony on an undisclosed opinion and would mislead the jury and confuse the issues. [Dkt. 142 at 18–19; Dkt. 175 at 10–12]. The Defendants argue that their rebuttal experts do not need to offer their own calculations of CellMark's damages and that any testimony countering Cunningham's model would be helpful to the jury. [Dkt. 149 at 12–14; Dkt. 151 at 6–9]. The Defendants are correct, so the Court will deny CellMark's Motion on this point.

11

Shilts and Kester did not provide a single, quantified total of CellMark's damages in their Reports, [*see* Dkt. 140-42 at 21; Dkt. 140-40 at 17], unlike Cunningham, [Dkt. 140-39 at 4 (claiming a total of $4,926,697.00 in lost profits damages for CellMark)]. Instead, their Reports take a piecemeal approach to separately criticize various aspects of Cunningham's model, and they point out instances where they believe Cunningham's calculations have overstated the potential damages by a specific, quantified amount. [*See generally* Dkt. 140-42; Dkt. 140-40]. During Shilts's deposition, he stated that he did not run his own independent loss-profit analysis because he was merely a rebuttal expert hired "to look at the calculations and assumptions employed by Mr. Cunningham." [Dkt. 140-41, Shilts Depo., at 16].

A rebuttal expert's role is "'to contradict or rebut evidence on the same subject matter identified by another party['s]' expert disclosure." *Hampton v. Bob Evans Transp. Co.*, No. 6: 18-143-DCR, 2019 WL 1521976, at *2 (E.D. Ky. Apr. 8, 2019) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)). In doing so, "[t]he rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Id.* (quoting *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *5 (E.D. Ky. Oct. 6, 2016)); *see also Benedict v. United States*, 822 F.2d 1426, 1429 (6th Cir. 1987) ("[Expert's] testimony regarding the accuracy of the methodology would have 'served the permissible rebuttal function of counteracting the testimony of the opposing expert witness.'" (quoting *United States v. Posey*, 647 F.2d 1048, 1052 (10th Cir. 1981))).

Further, a rebuttal expert "need not develop alternative, affirmative opinions in order to rebut the evidence presented by Plaintiff[]—that is not Defendants' burden." *SNMP Rsch., Inc. v. Extreme Networks, Inc.*, No. 3:20-CV-451-CEA-DCP, 2025 WL 1659076, at *8 (E.D. Tenn. June 11, 2025) (quoting *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1215 (E.D. Wash. 2015)). Rebuttal experts have "no burden to produce models or methods of their own; they need only attack those of the [opposing] experts." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007)).

Expert testimony by Shilts and Kester about CellMark's damages clearly falls within the scope of rebuttal. The Defendants' expert disclosures were properly made, and testimony consistent with their Reports would help the jury understand any perceived problems with Cunningham's opinions on damages. The lack of a total damages calculation is not a good reason to preemptively exclude such testimony when it was within the experts' purview to use a piecemeal approach instead. The Court recognizes that there is a potential for the jury to be confused by the ways in which Shilts and Kester might provide discrete quantified examples of how they believe Cunningham's calculations overstate CellMark's prospective damages. For example, the jury could be misled into believing that the quantified examples should simply be added together and then subtracted from Cunningham's calculations to produce an alternative damages number. And that is plainly not the import of those examples. But at this juncture, there appears to be no reason why that potential

13

confusion cannot be avoided or alleviated by contextualizing those quantifications and explaining what they mean—and just as importantly, what they do not mean. If properly explained, those quantified examples can be helpful to the jury in evaluating Cunningham's opinions and calculations. So the Court will not exclude this evidence now, but CellMark may object to it at trial if it is not properly contextualized or explained.

### E. Shilts may testify about the decline in the distilled spirits industry.

Lastly, CellMark argues that Shilts may not testify about a decline in the distilled spirits industry to rebut Cunningham's damages calculations. [Dkt. 142 at 20]. According to CellMark, Shilts's testimony would unreasonably rely upon an online news article[5] for which Shilts does not know the identity of the author. [*Id.*]. The news article summarizes a variety of surveys and reports about alcohol consumption by Americans to suggest that it is on the decline. Webster responds that Shilts was familiar with the news article and that it is of the kind that experts in his field routinely use. [Dkt. 149 at 14–15]. The Court agrees with Webster and will allow him an opportunity to introduce testimony from Shilts about the effects of a decline in the alcohol industry on Cunningham's opinions.

Shilts cites the news article in support of his assertion that "[t]he decline of related markets should have been considered, as well" when Cunningham was deciding which market-related factors to analyze for his damages model. [Dkt. 140-

---

[5] Mark Dent, *Why America is in an alcohol recession*, Hustle (Jan. 17, 2025), https://perma.cc/7WP3-7QG7.

42 at 4, 6]. In Shilts's view, the article shows that "[t]he alcohol industry was in decline towards the end of 2022 and into 2023 and 2024," and this "impacted two of Webster's largest customers including MCC, which manufactures labels for Jack Daniel's, and G3 Enterprises, which manufactures labels for wine and spirits bottles." [*Id.* at 6]. During his deposition, CellMark's counsel asked Shilts if he knew who Mark Dent was, and Shilts replied that he did not. [Dkt. 140-41 at 8]. Mark Dent is the author of the article cited in Shilts's Report, but counsel did not provide this context to Shilts, nor was that context apparent based on counsel's line of questioning at the time. [*See id.* ("Q. I don't see his name in your report. I'm just asking if you know who he is.")].

Whether news articles or reports are a reliable basis for an opinion depends on the context and the kind of expertise at issue. In a case involving opinion testimony on business or economics issues, news articles containing survey data would generally be a reliable basis for an expert's opinion. *See Innovation Ventures, L.L.C. v. Custom Nutrition Lab'ys, L.L.C.*, 520 F. Supp. 3d 872, 892 (E.D. Mich. 2021) (finding that an economic expert could rely upon news articles about an investigation "to ascertain confounding variables affecting a product's market-share"). Experts in cases involving issues like medical or mechanical expertise, on the other hand, would generally not rely upon news articles to form an opinion. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 747 (N.D. Ohio 2014) (rejecting the use of online articles by a mechanical engineer to attempt to show that a product did not have a widespread defect).

It is widely believed that the alcohol industry is on the decline in the United States generally, and Shilts offers testimony on this point to lay out a factor that he believes Cunningham should have considered.  [Dkt. 140-42 at 6]; *see also* Doug Melville, *Is the World Going Sober?  $830 Million Wiped Of Liquor Stocks, As Jim Beam Halts Output*, Forbes (Jan. 2, 2026), https://perma.cc/E5MY-7AQL.  In this context, the article that Shilts relies upon appears on its face to be a reliable source of facts and data to support Shilts's opinion as a rebuttal expert.  Webster may not have remembered the name of the author in a vacuum during his deposition, [Dkt. 140-41 at 8], but that is an insufficient basis to preemptively conclude that Shilts cannot rely upon the article.

The Court is satisfied that the article contains the kinds of facts and data that business experts would rely upon, but Cellmark is free during trial to challenge Shilts about his knowledge of the article's author and publisher.  If CellMark believes that Shilts's reliance on the article is questionable, CellMark can cross-examine Shilts vigorously on that point at trial.  Indeed, that is one of "the traditional and appropriate means of attacking" evidence that one believes to be shaky.  *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).  Moreover, If CellMark can show during trial that Shilts has no way to vouch for the reliability of the underlying facts and data in the article, then Shilts's testimony on this point may be excluded or limited.  But for now, the Court concludes that Shilts should be allowed to testify about the decline in the alcohol industry and the impact he believes that has on Cunningham's opinions.

### III. Conclusion

For these reasons, it is hereby **ORDERED** as follows:

1)      CellMark's Motion to Exclude Certain Opinions of Robert Kester and Joshua Shilts, [Dkt. 140], is **GRANTED IN PART** and **DENIED IN PART** consistent with this opinion.

2)      The opinions expressed in Section XV of Shilts's report are excluded as irrelevant.

3)      Shilts and Kester may not testify about any legal opinions, including whether they believe Cunningham's opinions to be "speculative," "unreliable," or "unsupported by sufficient data," nor may they testify that Cunningham's opinions are not "credible" or otherwise opine on the weight and credibility to be ascribed to Cunningham's testimony.

4)      Shilts and Kester may opine as to Cunningham's assumptions regarding the exclusivity agreement and the impact those assumptions had on his damages calculations, but they may not testify as to the truth of any particular fact or testify that Cunningham's opinions are not based on truthful or objective evidence.

5)      Shilts may opine as to Cunningham's assumptions regarding CellMark's continued business relations with Duro-Last and the impact those assumptions had on his damages calculations, but he may not testify as to the truth of any particular fact or testify that Cunningham's opinions are not based on truthful or objective evidence.  He also may not opine that Webster's conduct regarding Duro-Last did not cause any damages to CellMark.

17

6)      Shilts and Kester may testify as to their critiques of Cunningham's damages calculations, including by providing quantified examples of how their critiques affect Cunningham's calculations.  However, CellMark may object to those quantified examples if they are not properly contextualized or explained to the jury in a way to avoid confusion.

7)      Webster may offer testimony from Shilts about the decline in the distilled spirits industry and how that relates to Cunningham's damages analysis.

Signed this 26th day of May, 2026.

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky